## Hoskins v. Commonwealth.

Dec. 1, 1944.

Will C. Hoskins and A. E. Cornett for appellant.

Eldon S. Dummit, Attorney General, Guy H. Herdman, Assistant Attorney General, and Vernon Faulkner for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Verlan Hoskins, and his two brothers, Marvin Hoskins and Brelin Hoskins, were jointly indicted in which they were accused of maliciously shooting and wounding Pearl Smith with the intention of killing him, but from the effects of which he did not die, an offense created by section 1166 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes (435.170 KRS).

The defendants in the indictment were jointly tried, and the court at the close of the evidence directed an acquittal for Brelin Hoskins, but by an appropriate instruction, submitted to the jury the issue of the guilt of Marvin Hoskins and appellant, Verlan Hoskins, followed by a verdict acquitting Marvin Hoskins but convicting appellant, Verlan Hoskins, and fixing his punishment at confinement in the penitentiary for two years, the minimum penalty. His motion for a new trial was overruled, and from that order and the judgment on the verdict he prosecutes this appeal.

The motion for a new trial stated five alleged grounds for a reversal, one of which was that the verdict

was so flagrantly against the evidence as to require a directed verdict of acquittal and which is the only ground urged in this court, since counsel no doubt was of the opinion, as are we, that the other grounds were entirely without merit.

The shooting occurred in an afternoon in August, 1943, in the neighborhood of 4 o'clock and not far from the residence of Bige Hoskins, which is located at some point along Trace Branch in Leslie County. The three defendants met Smith and some members of the Morgan family near the barn of Bige Hoskins, when shortly thereafter one of the defendants in the indictment, and one of the Morgans, engaged in a fist fight which—as best we can gather from the record—arose over the fact that one or the other of them had not been drafted as a soldier in the present war. Two of the defendants in the indictment—one of whom was appellant—were located across Trace Branch from the other members of the crowd and while the disturbance created by the fight referred to was in progress appellant shot Smith twice in the right side, one of the bullets passing through his body, and the other one lodging in his left side. He was taken to a hospital for an operation and remained there several days and then was confined in a hospital at Hyden where he remained for several weeks.

The shooting was admitted by appellant, but he seeks to be excused upon the ground of self-defense, testifying that at the time he shot his victim the latter had crowded him near the bank on his side of the branch with a drawn knife and struck him therewith cutting a gash in his clothing, as well as a slight one in his body. But on trial he introduced none of his clothing which he said was gashed by his victim, nor did he exhibit any scar on his body where he claims to have been wounded. He was corroborated in that contention by one of his brothers and, perhaps, by some other witnesses in the crowd, which was composed of some eight or ten persons, but Smith denied any such assault on his part. On the contrary he testified that at the beginning of the fight he peacefully endeavored to stop it, but at the time of the shooting he was standing still and engaged in no effort whatever to harm or injure either of the indicted defendants. He was corroborated in the main by witnesses testifying in his behalf, but, perhaps, the number of witnesses supporting defend-

ants' theory exceeded those testifying on behalf of the Commonwealth. But we have too often held that an issue of fact even in a criminal prosecution is not to be determined by the greater number of witnesses testifying for one side than the number testifying for the other one. That proposition is so fundamental and universally followed by this and other courts as not to require any repeating of it, as expressed in former opinions. Moreover, both the appellant and his brother, Brelin Hoskins, were contradicted when they testified that the latter did not shoot at the prosecuting witness on that occasion, and that he had no pistol at that time. That testimony was contradicted by more than one witness to the effect that Brelin Hoskins did have a pistol on that occasion and fired it at the prosecuting witness, Smith.

In giving the history of his actions and doings on the day of the shooting appellant said that he left his home shortly after noon destined for a mill located somewhere along Trace Branch and which carried him past the residence of Bige Hoskins. He said that he made that trip in order to procure a cousin to write a letter for him and that he carried along with him his new pistol for fear that he might be attacked by a mad dog, some of which he said had appeared in the neighborhood.

A statement of the ramblings of the Morgan and Hoskins crowds, among which was the prosecuting witness (who was with the Morgans) up and down Trace Branch on the day of the shooting, would extend the opinion beyond due bounds to the benefit of no one, since the crucial testimony as to what occurred *at the time* of the shooting is determinative of the issue, plus other related facts bearing upon it. The proof is to the effect that *at the immediate time* of the shooting there existed no ill feeling between the Morgan crowd, of which Smith was a member, and the Hoskins boys. However, a witness for the Commonwealth testified that Marvin Hoskins, in the presence and hearing of appellant, and immediately following the shooting by the latter, said, "You see now what one of these Stinnett guys come up here and got," and "the s—— o— b—— wouldn't come on to Pap."

We fail to find any denial of that testimony either by Marvin Hoskins or appellant, in whose presence the

statements were made. Its applicability appears when, according to the testimony there was a vicinity in the same general neighborhood known as the Stinnett neighborhood, whilst the Hoskins crowd were residents of an adjoining territory known as Hoskins neighborhood, as we also gather from the record. The proven statements clearly indicate that there existed some sort of rivalry between the inhabitants—or some of them—of the respective neighborhoods, and the sentiment expressed appears to refute the idea that the rivalry, if it did exist, was altogether a peaceable one, and may have influenced —at least to some extent—the commission of the crime with which appellant is charged. At least it may have been the spark that set in motion the conflagration resulting in Smith's wounds.

There is a story to the effect that an old Tennessee Constable was discussing the habit of carrying concealed deadly weapons, and he remarked that his long experience as a peace officer had convinced him that if one, by either actions or words, is insulted by another or his feelings wounded at a time when he had access to no weapon, he would ordinarily seek to pacify his opponent by tendering satisfying explanations, but if he were armed with a concealed deadly weapon it would whisper to him, "Say or do what you d——m please, I'll stand by you," and that obeying that silent promise by the one insulted and so secretly armed, was the cause of many homicides and unlawful woundings. In giving that illustration we would by no means be understood as holding that the concealed weapon carrier should be convicted of a crime committed in the use of his weapon merely because he was carrying it concealed. Our purpose in referring to the homespun logic of the Tennessee officer is for the purpose of calling attention to the fact that appellant in this case may have been prompted to commit his crime by obeying the whisperings of his concealed weapon. At any rate we are by no means convinced that the verdict of guilty is flagrantly against the evidence, or that it is not supported by sufficient evidence, which forms the only ground for which a reversal is asked.

Wherefore, the judgment is affirmed.